Good morning, Your Honor. My name is Jesse Cantor. May it please the Court. The three issues that I raised, I want to first start and focus on the problem that I see with admitting the alien file of Ray Yun Va in this particular case. And the problem that I have with the admission of the file is that a. there was no foundation laid to its admission because no witness with personal first-hand knowledge testified about its content nor testified about its connection with this particular case. Its authenticity was stipulated though, correct? As a condition precedent to admissibility. Right, but in terms of that this is, without talking about admissibility, but its authenticity that this is not the newspaper, this is this person's A file. Well, the way I understood the joint stipulation, which was part of the record, is that we were not objecting to the fact that this file was an immigration file, that it contained genuine immigration documents. Right, that's what I meant by authenticity. I think we're in the same. But we did not agree that it in any way, shape, or form was connected to this alien Saran SIM. And the problem that, and Judge Robart to some degree agreed with me on this argument because Judge Robart, the district judge, gave the jury a limited instruction. You cannot consider the contents of this file and you cannot consider the contents of the application. So the problem with the admission, and more importantly the summary chart, the corresponding summary chart that the lead agent presented and prepared, is that it ran afoul with the judge's ruling. Because what it did is it gave the jury content about who the petitioner was, my client, as well as the beneficiary, the alien who my client was accused of harboring. Now I understand the government is going to argue that part of the evidence in this case involved the immigration interview of Ruthie SIM with respect to her marriage to Meth Nav, her husband. What we did not see from that interview were any questions or any discussion about Ruthie SIM identifying the Raim Va file. At most what we had, Your Honors, was a question by the examiner, Are you living with your mother? And is your mother Raim Va? Now within the immigration file of my client's husband, and we did not object to that file coming into evidence, there was notations about my client petitioning for Raim Va. But the problem that we have here is that we have no evidence or no foundation that my client, with this particular immigration file, was the petitioner for a beneficiary being the unlawful alien, her sister Saran SIM. And the only way that the jury can come to this conclusion, that my client was harboring her sister, had to have been, in my opinion, through the summary chart prepared by the lead agent. Because it essentially summarized the content of this particular file. Again, it runs afoul to the limiting instruction, again, from Judge Robart. And then we get to the sufficiency of the evidence. Well, you know what's odd about this? Normally one says that hearsay is an out-of-court statement that's admitted for the truth of it. And in this case it's an out-of-court statement admitted to demonstrate its falsity, which seems like just the opposite. Well, I would submit that it's actually an out-of-court statement to prove that my client was the petitioner. And why is that important? Because then that would be used to prove that my client had knowledge of the unlawful status of Saran SIM. No, I thought it was to prove that the person she said was her mother was her sister. Right. And so on the jury instruction for harboring. . . Therefore, that it was false. Right. Submitting a false immigration application means necessarily that if you're approved a visa, because there was a visa that was approved, but it was approved by false information, misleading information. And that in and of itself makes you in the country illegally. And if my client. . . You know, I guess I'm struggling to figure out where your argument would lead in any case in which there's an effort to demonstrate that a document is fraudulent when the authenticity of that document is having been found in the files of the government or the bank's records or whoever the defrauded party is. This is in fact a physical copy or the original of what we found in our files. And then there's an effort to prove that it's false. Why is that a hearsay problem to begin with? Well, because the only way that the government was able to connect this file to the incident case was through the content of the file. Right. But it's not admitted for its truth. It's an effort to demonstrate exactly the opposite, that it's a fraudulent document. But if you don't admit it for its proof, if you don't admit it to prove the content, how can you connect that file to this particular case? And that's the problem that I have. For all we know, this file had nothing to do with the case until you looked at who prepared it, until you looked at who the petitioner was, and until you looked at who the beneficiary was. Otherwise, there is no connection between that file and this case because nobody testified about its contents. And what I would submit, the proper way to do it, and we see this a lot in immigration interviews, and we see this a lot through immigration examiners, and that is the immigration examiner brings out an I-129 petition, an alien fiancé petition, for example, is this your signature? Did you prepare this? Did you submit this? And the examiners do that all the time. Let me ask you this, though. In the context of all the evidence in the case, why wasn't any error, if there was error, harmless? Because without the content, there was no way to connect that this visa was ever submitted, prepared, or even approved with respect to my client's sister, Saran Sim. In other words, the government could have presented the examiner who processed the file, and, in fact, they did call one of the examiners who investigated the files for fraud, and there was never any testimony in the record about who prepared this particular immigration application. Furthermore, there was no testimony as to who the beneficiary was. So was Ronnie's file, was the file, alien file, admitted into evidence? Yes. Did it go back to the jury room? Yes, it did, to my understanding, it did. How about the summary chart? How about the summary chart? Did that go back into the jury room? That went back to evidence, too, over my objection. And there was a limiting instruction. Yeah, I was just going to say that there was a limiting instruction, correct? The limiting instruction was you cannot consider the file for its content, and that was an oral limiting instruction, and I cited that in the brief. I still opposed any kind of instruction with respect to that, because it shouldn't have gone in in the first place. And even with the limiting instruction … But we generally presume that the jury follows the limiting instruction. Right. That's true, but the limiting instruction is contradictory to the summary chart being admitted in the first place, because the summary chart summarizes content. It has my client's photograph right next to her sister's photograph. A jury has to necessarily conclude that my client was the petitioner and that her sister was a beneficiary. Okay. With respect to sufficiency of evidence, there were four count three … I'm sorry, count two through six involved substantive counts of visa fraud, and Ms. Simms was acquitted on counts three and five. With respect to all those counts, the government only chose to call one spouse with respect to the substantive counts, and Ms. Simms was found guilty on that. With respect to the other remaining, the government chose not to call either spouse. And why is that important? Because under the definition of a sham marriage, which is a material element to visa fraud, the government has to prove that both bride and groom did not intend to establish a life together as husband and wife. Well, they took a risk then, didn't they? Isn't all that … they presented circumstantial evidence. And I'm challenging that circumstantial evidence with respect to counts four and count six, because the circumstantial evidence that they presented with respect to count four was that the couple had been married before, that they had children from a previous marriage, and that there was a substantial amount of money that my client wrote to the U.S. citizen spouse. Now, if there was a witness that came to court at trial and testified about the purpose of that money from the government as to why that money was being given to the citizen spouse, such as being a payment, then obviously I could not make this argument. Wouldn't those payments coincide pretty closely with the events in the adjustment file? Right. And if we're going to draw the conclusion or the assumption that because it's coincidental to the timing of the marriage, the timing of the engagement party, you know, for all we know, at least in my position … You know, a jury's free to draw reasonable inferences. Yeah. And at some point … In my view, we'd look at the evidence in light most favorable to the government. And on that, Your Honor, if we're going to draw the assumption that this looks fishy, and that's sufficient to convict without understanding … Well, why couldn't the jury draw that inference? Because the fact of the matter is, is that when you balance out the inference as to an unlawful purpose of the money, you can easily draw the same equal inference that perhaps it was a gift and that perhaps maybe someone from Cambodia sent the money to my client because she's in the United States and has a U.S. bank account, and she relayed that gift on their behalf. Okay. And so with my remaining time, I would like to reserve two minutes in rebuttal. But the final argument that I make deals with sentencing, and I know the Court … I heard the Court's first case about that. And my position about Judge Robart's reasoning is that he simply cited the application notes without any meaningful explanation as to how they apply. And so my request would be to remand it back for resentencing so that Judge Robart can explain how the application notes vis-à-vis the record that he presided over justify an aggravating role adjustment. In my remaining 50 seconds here, the problem here in this case is that we had a number of spouses who were claimed co-conspirators that were also willing participants. And so in my mind, and this was our theme throughout trial, you can't really say who or how Ms. Sim had exerted control over these spouses. Did she arrange a marriage by paying for them to be married to one another? Our defense was no, this was a bride-well system. The jury disagreed. However, with respect to the extent of her role as a leader or organizer, that part of the record went undeveloped. Thank you. Good morning, Your Honor. May it please the Court. My name is Karen Johnson. I'm with the United States Attorney's Office in Seattle, and I was one of the trial attorneys on this case. Turning first to the admission of the Ray and Va alien file, as Your Honor noted, they were not admitted for their truth. There was a stipulation as to authenticity. And as Your Honor noted, we do presume that juries follow limiting instructions, and there's no reason to think they didn't here. Moreover, even if there was error, and I submit there was not, any error would have been harmless in light of the overwhelming evidence that Boothy Sim had sponsored her sister, knowing that it was, in fact, her sister, not her mother. Her mother, of course, being dead and buried in Cambodia, as Boothy Sim well knew. And that evidence is primarily the documents of the meth NAV alien file. There's no question that Boothy Sim submitted those documents. And in those documents, she stated that she previously submitted a visa petition to the Immigration and Naturalization Service on behalf of Va Ryun, her mother, in 2000. She also admitted in those documents that she had submitted an affidavit of support for Va Ryun, her mother. Again, this was in 2001. And in another document from the meth NAV alien file, she stated that her mother was Va Ryun, born in Cambodia and residing in Washington State. And I think the record is clear also that she made statements to multiple witnesses, Sopha Sam and Boothy Lauren, among them, that she had sponsored her sister as her mother. In terms of the harboring, she also helped, in addition to giving her sister a place to live, she helped her sister find a job. And then she lied during her CIS interview regarding the identity of her sister, falsely claiming it was her mother, to conceal her true identity from immigration authorities. With respect to the sufficiency of the evidence of count four, So this is the visa fraud substantive charge based on the sham marriage of Savi Hien and Chom Pen. Boothy Sim paid Chom Pen $10,500 to marry and sponsor Boothy Sim's brother. Boothy Sim arranged sham marriages for multiple members of her family, including Sadameas Molokalong, who were her nieces, Boothy Sim's nephew, Sophik Sim, and then another Sim relative, Rathobor. Savi Hien, who's also known as Polon, was married in Cambodia and had children in Cambodia. The payments, as Your Honor pointed out, are completely consistent with events in the alien file. So one payment was made a week prior to Chom Pen's departure to Cambodia. Another payment was made two days after the I-129F was approved. Another payment was made two weeks after Savi Hien's visa was issued. And that's the pattern with all of the sham marriages that Boothy Sim arranged. There were 10 different people who testified at trial that they were in sham marriages that Boothy Sim had orchestrated. And there's no other explanation in the record for these payments to Sim. The last payment that was made after Savi Hien's visa was issued was the subject of count 11, which is one of the money laundering convictions. And, again, that is also part of the pattern. You can see the money come in from Cambodia. Then Boothy Sim's bank account, she transfers it to other accounts and then writes checks to participants in sham marriages. So, for example, in the pattern, we know that she also wrote checks with money that came in from Cambodia to Nthavase, Tiger Keo, and Sal Andy Soth. In addition, the engagement ceremony in Cambodia was held at Savi Hien's real mother-in-law's house. There's the multiple false statements in the I-129F, the false statements that he'd never been married, didn't have children, and that he intended to live with Champagne. He never lived with Champagne. As other participants in sham marriages that Boothy Sim orchestrated, Savi Hien, when he came to the United States, lived with Boothy Sim and other members of the Sim family. They got married at a courthouse in the United States shortly after Hien's arrival, and Boothy Sim's nieces, Sadameus and Mola Kalong, who themselves were in sham marriages that Sim had orchestrated, were the witnesses at that ceremony. And then the documents themselves. First of all, the cover letter submitted. There's no requirement for individual U.S. petitioners to submit cover letters, and Senior Special Agent Cross testified that, in his experience, it's somewhat unusual for individual petitioners to do so. And you see these cover letters in all of the files for the sham marriages that Boothy Sim arranged. The format of the letters, if you take letters from different files and put them side by side, they're highly similar, if not identical. There's also misspellings that are found in multiple letters in different files, which, again, is consistent with the role of Boothy Sim being the visa fraud facilitator. So we believe that conviction on count four should be affirmed. There is more than sufficient evidence for the jury to conclude that this was a sham marriage and that, therefore, visa fraud had been committed. Were there other defendants that went to trial just then? Just Ms. Sim. Just she was the only one? And did all the others work out cooperation agreements? Many of the others, for example, Moni Vizna, Tiger Keogh, and Thavasay, most of them worked out cooperation agreements, yes, and were charged separately. With respect to count six, which is the sham marriage for Boothy Sim and Meth Nav, again, Meth Nav is one of Boothy Sim's own relatives. He is married to Boothy Sim's niece back in Cambodia, and they have children together in Cambodia. I think the primary evidence that shows this marriage is a fraud is the fact that during Boothy Sim's CIS interview in February 2006, she lied from beginning to end. She lied about everything. She lied about how she met Meth Nav. She gave a story about how she had known Meth since high school, and then they reconnected after she'd gotten divorced from now King Tian. But the truth is she knew Meth Nav because he was married and had children with Boothy Sim's own niece. She lied about Meth Nav being the beneficiary of her life insurance policy when, in fact, it was still now King Tian. She lied about who she traveled with in Cambodia after her divorce. She claims that she and, well, to take a step back, she had been married to now King Tian. They had gotten divorced in 2003. In January of 2004, Boothy Sim and now King Tian went to Cambodia together with, actually, a whole entourage of people, some of whom were going to participate in Chan Marriage while they were there. During her CIS interview, Boothy denied that she had traveled with now King Tian during this trip, that she had stayed with her family and he had stayed with his, but, in fact, they traveled together as a family the whole time, staying in the same room, staying in the same bed, traveling with their children. She lied about Brad Kadina and her relationship with him. She, of course, had arranged Brad Kadina's Chan Marriage to marry a Hang, and Brad Kadina was also married to Boothy Sim's niece, Mola Kalong. She lied about being a matchmaker. She was specifically asked, do you engage in matchmaking? Do you introduce Americans and Cambodians? And she said no. So I think the jury can and did correctly infer from that that her statements about her relationship with Meth Knav were also false. When Boothy entered the United States in September of 2005, which was actually after Meth Knav and his children had arrived in the United States, she was asked, what are the names of Meth Knav's children? And she did not know. Even as recently as 2008, Boothy Sim was still seen on outings with Ngo Kinh Thien and her, and Ngo Kinh Thien's finances remained intertwined for years after they had been divorced. Just briefly with respect to Count 11, if you find that the evidence was sufficient to show that the Chan-Pen-Savvy-Hien marriage was a sham, then you should also find that Count 11, the evidence was sufficient. And I don't have – well, if Your Honors have any questions, I'm happy to address them at this time. Otherwise, I will cede the rest of my time. Thank you, Counsel. Thank you. Just briefly, still the government has not addressed the intent of the parties with respect to the substantive counts. And I'll just pose this question to think about. And that is, even assuming – let's assume for a moment that Ms. Sim or a family member from one of the Cambodian spouses offered money as consideration to become involved in a marriage, which is what the government's theory is, that is still under the Oriana Blanco decision, that is still not sufficient to justify a sham marriage. In fact, Oriana Blanco gives us explanations that people marry for money, people marry for status, people marry for various reasons other than love. The question is, at the time that they sign that marriage certificate, do they intend to establish a life together as husband and wife? The government called through – basically for all of its overt acts in Count 1, called at least one spouse to testify, sometimes both spouses. And with respect to Count 2, the only substantive count that were not appealing, called in the U.S. citizen spouse, but chose not to for whatever reason call either spouses. And obviously they had no way to call my client, but they certainly could have called my client's husband to testify, and they chose not to. And on those grounds, even if the spouses, or one of the spouses, is promised money to marry, and I'm not conceding that, but even assuming that under the Oriana Blanco reasoning, that's still insufficient to establish a sham marriage. Thank you. Counsel, case disargued will be submitted. The court will stand in recess for the day. All rise.
judges: Reinhardt, Graber, Paez